## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| KARLA KAY GAGEBY,<br><br>       Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>       Defendant. | CV 23-30-BU-JTJ<br><br><br>**MEMORANDUM<br>AND ORDER** |

### INTRODUCTION

Karla Kay Gageby (Gageby) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

### JURISDICTION

The Court possesses jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Gageby resides in Butte, Montana. 28 U.S.C. § 1391(e)(1); L.R. 1.2(c)(2).

1

## PROCEDURAL BACKGROUND

Plaintiff filed her application for social security disability insurance benefits on August 26, 2015.  (Doc. 8 at 1–2).  Gageby's claim was denied upon initial review and again on reconsideration.  (Doc. 6 at 82–93, 93–113).  Gageby requested and was granted a hearing before an Administrative Law Judge ("ALJ").  (Doc. 6 at 126–27).  The ALJ issued an unfavorable decision on November 15, 2018.  (Doc. 6 at 1077–98).  The Appeals Council denied review of the ALJ's decision.  (Doc. 6. at 1104).  Gageby appealed the Commissioner's decision to the district court.  (Doc. 6 at 1116).  The district court reversed the Commissioner's decision and remanded for further proceedings.  (Doc. 6 at 1141).

The ALJ conducted a second hearing on December 14, 2021.  The ALJ issued an unfavorable decision on March 2, 2022.  (Doc. 6 at 1029–42).  The Appeals Council denied Gageby's request for review.  (Doc. 6 at 1021–23).  The denial rendered the ALJ's decision the final decision of the Commissioner.  *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018).

Gageby filed the present appeal on May 15, 2023.  (Doc. 1).  The matter is fully briefed.  (Docs. 8, 10 and 11).  The Court is prepared to rule.

## STANDARD OF REVIEW

The Court reviews the Commissioner's final decision under the substantial evidence standard.  42 U.S.C. § 405(g).  The Commissioner's decision will be

2

disturbed only if it is not supported by substantial evidence or if it is based on legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 678 (9th Cir. 2005). "Substantial evidence means more than a scintilla, but less than a preponderance." *Smolen*, 80 F.3d at 1279. The Court must "consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion." *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by substantial evidence in the record, but it may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).

## **DISABILITY CRITERIA**

A claimant is disabled for purposes of the Social Security Act if (1) the claimant "suffers from a 'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months'" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is unable to perform their previous work and also cannot "engage in any other kind of substantial gainful work which exists in the

national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b), 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), (e), 416.920(d), (e).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one

through four. *Id.* at 953.  The Commissioner bears the burden of proof at step five.

*Id.* at 953–54.

## ALJ'S DETERMINATION

The ALJ followed the 5-step evaluation process for evaluating Gageby's

claim.  At step one, the ALJ found that Gageby had not engaged in substantially

gainful activity since her alleged onset date of June 12, 2015.  (Doc. 6 at 1032).

The ALJ determined that Gageby last met the requirements for insured status under

the Social Security Act on December 31, 2021.  *Id.*

At step two, the ALJ found that Gageby had the following three severe

impairments: organic brain syndrome, obesity, and chronic obstructive pulmonary

disorder.  (Doc. 6 at 1032).  The ALJ also found that Gageby had the following

five non-severe impairments: pulmonary hypertension, chronic diarrhea,

obstructive sleep apnea, cardiomegaly and bipolar disorder.  *Id.*

At step three, the ALJ found that Gageby did not possess an impairment or

combination of impairments that met or medically equaled the severity described

in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, of the Social

Security regulations.  (Doc. 6 at 1034).

Before considering step four, the ALJ determined Gageby's residual

functional capacity.  (Doc. 6 at at 1036–37).  The ALJ determined that Gageby

possessed the residual functional capacity to perform light work subject to the following conditions: 1) Gageby could lift, carry, push and pull up to ten pounds frequently and up to twenty pounds occasionally; 2) Gageby was able to stand and/or walk about two hours (with normal breaks) over the course of an average eight-hour workday; 3) Gageby could sit about six hours (with normal breaks) in an average eight-hour workday; 4) Gageby could occasionally climb ramps and stairs, balance on narrow/uneven surfaces, stoop, kneel, crouch and crawl; 5) Gageby could never climb ladders, ropes, or scaffolds; 6) Gageby could frequently reach overhead bilaterally; 7) Gageby must avoid concentrated exposure to temperature extremes and noise levels greater than 3 out of 5 as described by the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations; 8) Gageby must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery, and fumes, odors, dust, gases, and areas of poor ventilation; 9) Gageby can understand, remember and carry out simple, detailed, and complex tasks; 10) Gageby can maintain attention, concentration, persistence, and pace for 8-hour work days and 40-hour work weeks; 11) Gageby can tolerate interaction with supervisors, coworkers, and the public; and 12) Gageby can tolerate usual work situations and tolerate changes in routine work settings.  (Doc. 6 at 1036–37).

6

At step 4, the ALJ determined that Gageby possessed the residual functional capacity to perform her prior work as an eligibility worker.  (Doc. 6 at 1046).

At step five, the ALJ determined that Gageby possessed the residual functional capacity to perform jobs that existed in significant numbers in the national economy such as: data entry clerk and eligibility clerk.  (Doc. 6 at 1047-48).  Based on these findings, the ALJ found that Gageby was not disabled.  (Doc. 6 at 1048).

## **CONTENTIONS**

### A.    **Gageby's Contentions**

Gageby argues that the Court should reverse the Commissioner's decision and remand the case for further proceedings or an award of benefits.  Gageby argues that the Commissioner's decision should be reversed for the following two reasons: 1) the ALJ failed to properly evaluate the opinions of state agency psychiatrist Dr. Robert Campion; and 2) the ALJ's residual functional capacity assessment failed to account for Gageby's limitations with respect to concentration, persistence and pace.  (Doc. 8 at 1).

## B.    Commissioner's Contentions

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ's decision was based on substantial evidence and was free of legal error.  (Doc. 10 at 2–6).

## DISCUSSION

## A.    Dr. Campion's Opinions

Gageby argues that the ALJ erred by failing to provide specific and legitimate reasons for assigning minimal weight to the opinions of non-examining psychiatrist Dr. Campion.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  For claims filed before March 27, 2017, the opinions of each type of physician is afforded a different weight.  20 C.F.R. §§ 404.1527, 416.927.   The opinions of a treating physician and an examining physician are afforded "greater weight than the opinion of a non-

8

examining physician." *Lester*, 81 F.3d at 830.

In determining the weight to be assigned to a medical opinion, the ALJ considers the following factors: length, nature, and extent of the treating relationship; supportability of the opinion; consistency of the opinion with other evidence in the record; the specialization of the source; and any other factors that support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)–(6).  "The more a medical source presents relevant evidence to support a medical opinion . . . the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). "Furthermore, because non-examining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." *Id*.  "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).  An ALJ may disregard any medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015).

Dr. Campion reviewed Gageby's medical records in September 2016 and November 2016.  (Doc. 6 at 103–05; 109–11).  Dr. Campion's report from September 2016 noted that Gageby had no mental limitations, but he added an

9

addendum in November 2016, which identified some limitations.  (Doc. 6 at 104–105).  Dr. Campion opined in 2016 that Gageby had moderate limitations in her ability to maintain concentration, persistence and pace, and that Gageby had moderate limitations in her ability to carry out detailed instructions.  (Doc. 6 at 105, 110–11).

The ALJ gave "little weight" to Dr. Campion's opinions.  (Doc. 6 at 1046).  The ALJ explained that she discounted Dr. Campion's opinion that Gageby had moderate limitations in concentration, persistence and pace because the opinion was not supported by the record.  The ALJ noted that Gageby had "returned to skilled work following her brain injury in 2007 and had worked for 8 years thereafter until 2015.  (Doc. 6 at 1045–46).   The ALJ further noted that Gageby generally had "normal mental status examinations" showing that Gageby was alert and oriented; Gageby had sought "no treatment for cognitive deficits;" and Gageby was able to successfully perform activities of daily living "such as planning, traveling, paying bills, shopping and accounting."  *Id.*  The ALJ discounted Dr. Campion's opinion that Gageby could perform only routine, repetitive tasks because the opinion conflicted "with [Dr. Campion's] own notation that [Gageby] 'was . . . able to continue working as a manager for a state agency after her reported traumatic brain injury [in 2007].'"  The ALJ stated that she also discounted Dr. Campion's opinions

because Dr. Campion did not have the opportunity to review the evidence submitted

through the date of the administrative hearing in 2018, Dr. Campion did not hear

Gageby's testimony in 2018, and Dr. Campion conducted no examination of

Gageby.

Gageby argues that her ability to work from 2007 until her alleged onset date

June 12, 2015 is not in question so the ALJ should not have used this fact as a basis

to discount Dr. Campion's opinion. (Doc. 8 at 10).  The Court disagrees.

Gageby's ability to work for eight years in skilled employment is relevant

evidence that supports the ALJ's decision to discount Dr. Campion's opinions.

Gageby described her work as "very" detailed, "very technical," "pretty intense,"

and "[e]xceedingly" demanding.  (Doc. 6 at 53).  The ALJ noted that Gageby had

relearned new job duties after her accident in 2007 "without difficulty, and was

performing well until her office was rearranged and her job functions were changed

without affording [Gageby] more training or time to adjust to these changes." (Doc.

6 at 1035).  Given that the demands of Gageby's employment from 2007 through

2015 conflicted with Dr. Campion's opinions, the ALJ was correct to rely on

Gageby's previous employment as a reason to reject Dr. Campion's opinions.

In summary, the ALJ reasonably concluded that Gageby's ability to work in

skilled employment for 8 years after her traumatic brain injury undermined

Dr. Campion's opinion that Gageby had moderate limitations with concentration, persistence, and pace, and undermined Dr. Campion's opinion that Gageby was restricted to only routine, repetitive tasks.  The reasons provided by the ALJ for discounting Dr. Campion's opinions were specific and legitimate.  No error occurred.

**B.     The ALJ's Residual Functional Capacity Determination**

Gageby argues that the ALJ's residual functional capacity (RFC) determination was deficient because it failed to account for Dr. Campion's opinion that Gageby had moderate limitations with respect to concentration, persistence and pace.

A residual functional capacity is an assessment of the claimant's ability to perform work-related physical and mental activities in a work setting on a regular and continuing basis despite her impairments and limitations.  20 C.F.R. §§ 404.1454(a), 416.945(a); Social Security Ruling (SSR) 96-8p.  The ALJ's RFC assessment must include all of the claimant's medical and vocational limitations that are supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-1218 (9th Cir. 2005).  The ALJ is not required to take into account claimed limitations that the ALJ found to be incredible or not supported by the record.  *Id.*

12

Here, the ALJ's RFC assessment is set forth on pages 8 though 18 of the ALJ's Decision. (Doc. 6 at 1036-1046). The ALJ explained why Dr. Campion's opinion that Gageby had moderate limitations with respect to concentration, persistence, and pace was not supported by the record. (Doc. 6 at 1046). The ALJ found that Gageby did possess a mild limitation with respect to concentration. (Doc. 6 at 1046). The ALJ noted that Gageby had difficulty concentrating in noisy environments. (Doc. 6 at 1045).

The ALJ's RFC assessment included an accommodation for Gageby's concentration deficit. The ALJ's RFC assessment provided that Gageby must avoid exposure to noise levels greater than 3 out of 5 as defined in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations. (Doc. 6 at 1036). The Selected Characteristics of Occupations describes noise level 3 as "moderate" level noise, such as a "business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours." SCODICOT, App. D, Environmental Conditions. The ALJ's noise limitation properly accounted for Gageby's mild concentration deficit. The ALJ's RFC assessment addressed all of the limitations that were supported by substantial evidence in the record. No legal error occurred.

## CONCLUSION

The ALJ did not err in denying Gageby's application for Social Security disability insurance benefits.

## ORDER

1.     The Commissioner's decision to deny Gageby's claim for Social Security disability insurance benefits is AFFIRMED.

2.     The Clerk is directed to enter judgment accordingly.

DATED this 29th day of February, 2024.

John Johnston
United States Magistrate Judge

14